IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MICHAEL SMITH, | * |
| Plaintiff, | * |
| v. | * Civil Action No.: RDB-04-2288 <br> (Consolidated with: RDB-05-1153) |
|  | * |
| WASHINGTON SUBURBAN <br> SANITARY COMMISSION, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This employment discrimination action arises out of two complaints filed by Michael Smith ("Plaintiff") against his former employer, Washington Suburban Sanitary Commission ("WSSC" or "Defendant"). Plaintiff alleges, *inter alia*, that Defendant permitted a hostile work environment and retaliated against him on the basis of his race, color, and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et. seq.*, and 42 U.S.C. §§ 1981 & 1983, engaged in a civil conspiracy under 42 U.S.C. §§ 1985 & 1986, violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.*, and committed several intentional torts against him.[1]  Pending before this Court is Defendant's Motion for Summary Judgment (Paper No. 49 in RDB-04-2288). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, Defendant's Motion for

---

[1] Civil actions RDB-05-1153 and RDB-04-2288 were consolidated by this Court's Order of November 3, 2005 (Paper No. 14 in RDB-05-1153; Paper No. 49 in RDB-04-2288). The allegations in the complaints in both cases are essentially identical.

Summary Judgment is GRANTED in these consolidated actions.

## BACKGROUND

The facts must be viewed in a light most favorable to the Plaintiff as the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Plaintiff, an African-American man, began working for WSSC in August of 1998 as a Microcomputer Specialist. During his first few months of employment, Plaintiff received less than satisfactory performance ratings. In March of 2000, he filed an internal grievance alleging racial discrimination, because his coworkers allegedly made racial jokes in his presence. He was fired on July 12, 2000, for alleged misconduct, including unauthorized use of and recklessly driving a company vehicle. (*See* Def.'s Mem. Summ. J. Ex. 2.) After an appeal before the Office of Administrative Hearings ("OAH") on March 12, 2001, he was reinstated to his position because WSSC failed to follow its own personnel policies and awarded back pay.

On November 9, 2001, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendant retaliated against him for filing an internal grievance by firing him in July of 2000, in violation of Title VII. The EEOC issued a "no cause finding" right to sue letter on October 22, 2002.

In April of 2002, Plaintiff was reassigned to a different unit within WSSC, because his previous job had been eliminated as part of a general reorganization plan. Although his job title remained the same, Plaintiff was upset about the relocation and refused to do some of the work assigned to him. He also yelled during meetings and told his immediate supervisor, Colleen Bowen, that she should not speak to him. Two of Plaintiff's coworkers told Ms. Bowen that they did not feel comfortable working with him because of his aggression. On April 26, 2002, two

WSSC managers recommended that Plaintiff undergo an independent medical and psychiatric examination ("IME") to determine his job fitness. He was placed on paid administrative leave predicated upon his compliance with the IME process. However, Plaintiff failed to cooperate with the doctors to whom he was referred, so he was placed on leave without pay.

On July 11, 2003, Plaintiff was fired from WSSC "for exhibiting threatening behavior in the workplace." (*Id*. at Ex. 11.) Plaintiff appealed his discharge to OAH.[2] He also filed a second EEOC Charge of Discrimination on May 25, 2004, alleging both retaliation and racial discrimination as the basis for his discharge. On June 17, 2004, Administrative Law Judge ("ALJ") Stephen Nichols issued an opinion finding that WSSC fired Plaintiff for cause, namely his outbursts and refusal to cooperate during the IME process. (*Id.* at Ex. 12.) Plaintiff then filed suit in this Court on July 19, 2004 (Civil Action No. RDB-04-2288). On January 26, 2005, the EEOC issued a "no cause finding" right to sue letter in response to Plaintiff's second EEOC Charge. Plaintiff then filed a second Complaint[3] on April 26, 2005 (Civil Action No. RDB-05-1153), and the two cases were later consolidated.

The EEOC's October 22, 2002, right to sue letter required that Plaintiff file an action within 90 days of receiving the letter. (*See* Def.'s Mem. Summ. J. Ex. 6.) Because Plaintiff did not file his first complaint until July 19, 2004, this consolidated action can only be premised

---

[2] A WSSC employee "may not be permanently removed except for cause and after an opportunity to be heard. The discharged employee may appeal to the Office of Administrative Hearings. . . ." Md. Code Ann. art. 29, § 11-109(b)(1) (2004).

[3] Plaintiff's first complaint (RDB-04-2288) was filed on July 19, 2004—before the EEOC issued the January 26, 2005, right to sue letter that allowed this action to proceed. Thus, his second Complaint (RDB-05-1153), filed April 26, 2005, contains the most relevant and thorough articulation of Plaintiff's claims. All references to a "Complaint" in this Opinion refer to the RDB-05-1153 Complaint, although the claims are essentially the same in both pleadings.

3

upon the claim contained in his May 25, 2004, EEOC Charge—that Defendant fired Plaintiff in retaliation for his filing the first EEOC Charge.

Defendant filed a Motion to Dismiss on March 13, 2006 (Paper No. 38 in RDB-04-2288), after Plaintiff failed to comply with the initial discovery order and schedule issued by this Court. A new scheduling order was issued by the Court on March 15, 2006 (Paper No. 44 in RDB-04-2288), but Plaintiff again failed to submit requested documents and satisfactory answers to WSSC's interrogatories.[4]  Defendant filed a Motion for Summary Judgment on June 27, 2006.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the

---

[4]  On September 22, 2006, this Court held a telephonic hearing on the record with respect to Plaintiff's discovery violations and Defendant's Motion to Dismiss.  In light of the consolidation of the two actions and the pendency of the subject Motion for Summary Judgment, the Court deferred any ruling on the Motion to Dismiss as well as any action on Plaintiff's discovery violations.  In light of the Court's current ruling on the Motion for Summary Judgment, the matter of the discovery violations need not be addressed and the Motion to Dismiss is MOOT.  On September 27, 2006, Plaintiff filed a Motion to Depose WSSC's Witnesses, Reopen Discovery, and Stay the Proceedings of Summary Judgment (Paper No. 60 in RDB-04-2288).  However, for the reasons articulated in the September 22, 2006, telephonic hearing on the record, and the fact that this Court has given Plaintiff ample time to conduct discovery in an action that was first initiated over two years ago, Plaintiff's Motion is DENIED.

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd.,* 475 U.S. at 587 (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d

5

774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

DISCUSSION

Plaintiff's Complaint purports to state claims under Title VII (sex, color, and race discrimination as well as retaliation), the ADA, and 42 U.S.C. §§ 1981, 1983, 1985, and 1986.[5] It also purports to bring common law tort actions, including invasion of privacy, intrusion upon seclusion, publicizing private information, false light, and intentional infliction of emotional distress.[6] These claims will be discussed separately.

**I.      Title VII (Sex and Color Discrimination) & ADA**

Plaintiff alleges that Defendant created a hostile work environment based on his sex and color and violated the ADA. However, in order to bring an action under Title VII and the ADA, it is well settled that a plaintiff must first exhaust his administrative remedies. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 508-09 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5); *Walton v. Guidant Sales Corp.*, 417 F. Supp. 2d 719, 720 (D. Md. 2006). In his second EEOC Charge, Plaintiff only raised Title VII race discrimination and retaliation claims. He did not allege sex, color, or disability discrimination. (*See* Def.'s Mem. Summ. J. Ex. 15.) Also, "[u]nder Title VII,

---

[5]     Plaintiff also alleges that Defendant "intentionally deprived the Plaintiff of his property rights on the basis of race" in violation of 42 U.S.C. § 1982. (Compl. ¶ 238.) However, Plaintiff does not specify or introduce evidence of any property rights of which he was deprived. Thus, there is no genuine issue of material fact as to whether Plaintiff has a claim under 42 U.S.C. § 1982 and Defendant is entitled to judgment as a matter of law.

[6]     Count XXVI of Plaintiff's Complaint also purports to state a claim for *negligent* infliction of emotional distress, but it is well settled that while Maryland recognizes a claim for *intentional* infliction of emotional distress, it does not recognize a separate cause of action for *negligent* infliction of emotional distress. *See Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000).

a plaintiff in a "deferral state," a state that has its own law prohibiting discrimination and an agency enforcing the law, has 300 days after the alleged act of discrimination to file a claim with the EEOC" instead of the usual 180 days.  *Skipper v. Giant Food, Inc.*, 187 F. Supp. 2d 490, 492 (D. Md. 2002).  Since Maryland is a deferral state, Plaintiff had 300 days to bring an EEOC Charge on his sex, color, and disability discrimination.  Although Plaintiff timely filed his second EEOC charge on race and retaliation claims, he missed the 300-day deadline for sex, color, and disability claims.  Thus, Plaintiff has failed to exhaust his administrative remedies[7] and Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's Title VII sex and color discrimination and ADA claims.

## II.     Title VII (Retaliation)

Plaintiff next alleges that he was retaliated against for filing an internal racial discrimination complaint.  Plaintiff has not produced any direct evidence of employment discrimination.  Thus, in order to establish a claim for retaliation, he must satisfy the three-step burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, he must present enough evidence to prove a *prima facie* case of discriminatory retaliation.  *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000).  Second, once he establishes a *prima facie* case, the burden shifts to Defendant to produce evidence that the

---

[7] Even if Plaintiff had timely filed claims for sex, color, and disability discrimination, the claims would still not survive summary judgment substantively.  There is insufficient evidence to support a *prima facie* case of sex, color, or disability discrimination.  Even if Plaintiff could make out a *prima facie* case, though, there is abundant evidence that Plaintiff was fired because of his behavior at work, ranging from not completing his assignments to yelling at coworkers and supervisors.  Under the *McDonnell Douglas* burden-shifting scheme discussed *infra* in Part II, Plaintiff has not forecast any evidence that Defendant's legitimate, nondiscriminatory reason for firing Plaintiff—his misconduct—was a pretext for sex, color, or disability discrimination.

adverse employment action was taken against Plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Third, Plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

**A.**     *Prima Facie* **Case**

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) WSSC took an employment action against him that a reasonable employee would have found materially adverse, and (3) there was a causal connection between the protected activity and the adverse employment action. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 298 (4th Cir. 2004) (en banc); *Burlington Northern & Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006). The recent Supreme Court case *Burlington Northern & Ry. Co.* changed the standard by covering any employer action that is *materially* adverse to a *reasonable* employee and that would deter an employee from engaging in protected equal opportunity employment activities. 126 S. Ct. at 2415.

When Plaintiff filed an EEOC Charge of Discrimination in November 9, 2001, he engaged in a protected activity in satisfaction of the first element. He alleges that he was fired as a result, and being discharged is clearly an employment action that any reasonable employee would find materially adverse. Thus, Plaintiff has also met the second element of the *prima facie* case of retaliation.

As to the third prong, both this Court and the Fourth Circuit have held that proximity in time between the protected activity and the employment action is sufficient to establish the

causation requirement. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (finding the thirteen-month interval between the plaintiff's charge of discrimination and termination was "too long to establish causation absent other evidence of retaliation"); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1997) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); *Elries v. Denny's, Inc.*, 179 F. Supp. 2d 590, 599 (D. Md. 2002). In this case, Defendant received notice of Plaintiff's first EEOC Charge in early December of 2001, but Plaintiff was not fired until July of 2003—more than a year and a half later. This is certainly too long a period of time to establish even the slightest inference of causation between the two events. Thus, Plaintiff must present other evidence suggesting that his termination was retaliatory.

Plaintiff's second EEOC Charge alleged only that he was fired in retaliation for filing the first EEOC Charge; he offered no other evidence of retaliation. In his Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition"), Plaintiff claims that he was subject to "retaliatory demotion . . . from March 2000 to April 26, 2002." (Pl.'s Mem. Opp'n Summ. J. ¶ 6.) Plaintiff alleges that WSSC retaliated against him by demoting him (because he was reassigned to a new desk and coworkers "leered" at him), and requiring that he undergo a medical examination. (*Id.* ¶¶ 6-38.) Unlike his second EEOC Charge, however, Plaintiff's Opposition states that these "retaliatory" actions resulted from an internal grievance Plaintiff filed in 2000 and the fact that OAH reinstated Plaintiff after he was fired in July of 2000—not the first EEOC Charge he filed, as stated in his second EEOC Charge. (*Id.* ¶¶ 11, 13.)

Plaintiff has not presented any evidence of retaliation other than his termination. Thus, he has failed to meet the third element of the *prima facie* case of retaliation.

### B. Legitimate, Nondiscriminatory Reason for Discharge

Even if Plaintiff had presented a *prima facie* case of retaliation, Defendant has articulated a legitimate, nondiscriminatory reason for firing him. Specifically, the notice of discharge sent to Plaintiff cited "exhibiting threatening behavior in the workplace" as the basis for his release. (Def.'s Mem. Summ. J. Ex. 11.) Plaintiff apparently acted so menacingly towards coworkers on numerous occasions that Tracey Williams, a supervisor, considered "relocat[ing] all the staff except Plaintiff to another floor so that they would not have to be subjected to his outbursts." (*Id.* at 20.) As to the alleged demotion, ALJ Nichols found that Plaintiff's prior position was eliminated as part of a WSSC-wide reorganization, not in retaliation. (*Id.* at Ex. 12.) Plaintiff has not produced any evidence that Defendant's proffered reason for firing him was a pretext for retaliation.

In sum, no reasonable jury could find that Defendant retaliated against Plaintiff by firing him after he filed an EEOC Charge. Because there is no genuine issue of material fact, Defendant is entitled to judgment as a matter of law.

### III. Title VII (Race Discrimination)

Plaintiff's complaint purports to state a claim for racial discrimination under Title VII. Specifically, Plaintiff alleges that he was fired on the basis of his race. The *McDonnell Douglas* burden-shifting analysis discussed in Part II, *supra*, applies to Title VII race discrimination claims as well. A *prima facie* case requires a showing that "(1) plaintiff belongs to a protected class; (2) plaintiff 'engaged in prohibited conduct similar to that of a person of another race;' and

(3) 'that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.'" *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 964 (4th Cir. 2005) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)). Plaintiff is clearly a member of a protected class because he is African-American. However, he has produced no evidence that he engaged in prohibited conduct similar to that of a person of a different race. He certainly engaged in prohibited conduct by lashing out at coworkers, exhibiting threatening behavior at work, and failing to cooperate with doctors during the IME process. However, he has not forecast evidence that any coworker of another race engaged in similar conduct or that any such person was retained while he was fired. There is simply no basis to infer that he was fired on the basis of his race.

As discussed above, Defendant articulated a legitimate, nondiscriminatory reason for firing Plaintiff: his violent behavior. ALJ Nichols already found that Plaintiff was fired because of his threatening behavior and failure to comply with the IME process. This Court agrees with Judge Nichols' findings, as there was abundant evidence before him demonstrating Plaintiff's misconduct. Plaintiff has introduced no evidence demonstrating that Defendant's proffered reason for firing him was a pretext for retaliation. Thus, no reasonable jury could find that Plaintiff was fired because of his race, and Defendant is entitled to judgment as a matter of law.

### IV.     42 U.S.C. § 1981 & § 1983

Plaintiff's Complaint purports to state claims that Defendant interfered with Plaintiff's constitutional Due Process and Equal Protection rights under 42 U.S.C. § 1981 and § 1983. Specifically, Plaintiff alleges that he was subject to a hostile work environment because his coworker "leered" at him and that he was denied certain benefits based on his race. Employment

discrimination claims brought under 42 U.S.C. § 1981 and § 1983 have the same elements as Title VII claims.  *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (citing *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985)).  Thus, for the same reasons discussed in Part III, *supra*, Plaintiff has not presented sufficient evidence to support his claims for racially-motivated denial of equal protection.

In order to bring a claim of hostile work environment based on sexual harassment, Plaintiff must show that "the offending conduct (1) was unwelcome, (2) was based on [his] sex, (3) was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment, and (4) was imputable to [his] employer." *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 331 (4th Cir. 2003) (citing *Spicer v. Virginia*, 66 F.3d 705, 709-10 (4th Cir. 1995) (en banc)).  The only evidence Plaintiff offers of sexual harassment is that a coworker leered at him and that he was asked embarrassing questions during the IME.  These events were certainly unwelcome to Plaintiff.  However, there is no evidence that they were motivated by Plaintiff's sex.  Also, they do not constitute offensive conduct that is so "severe or pervasive to alter the conditions of" Plaintiff's job, even if they were unwelcome to him.  Thus, Plaintiff has failed to meet the four-prong test for sexual harassment.

Because no reasonable jury could find that Defendant interfered with Plaintiff's constitutional rights under 42 U.S.C. § 1981 and § 1983, there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

**V.    42 U.S.C. § 1985 & § 1986**

Plaintiff alleges that WSSC employees engaged in a civil conspiracy to deprive him of

his constitutionally protected rights.[8] The Supreme Court has held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985 (3)." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979); *see also Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 548-49 (D. Md. 2001). Citing *Great Am. Fed. Sav. & Loan Ass'n*, Defendant contends that "Plaintiff's claims of sexual harassment, retaliation, racial discrimination, and hostile work environment based on race are all claims that can be redressed by filing a Title VII action proper." (Def.'s Mem. Summ. J. 32.) This Court agrees that the best remedy for employment discrimination claims lies in Title VII, rather than 42 U.S.C. § 1985. Because a claim under 42 U.S.C. § 1986 essentially requires a showing that Defendant allowed a § 1985 civil conspiracy to take place, there is no basis for a § 1986 claim. Therefore, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant engaged in or allowed a civil conspiracy to deprive him of his rights, and Defendant is entitled to judgment as a matter of law.

## VI.     Tort Claims

Plaintiff alleges that Defendant committed several intentional torts against him, namely invasion of privacy, intrusion upon seclusion, publicizing his private life, false light, and intentional infliction of emotional distress.[9] Under Maryland common law, however, Plaintiff

---

[8]     It is unclear from Count XIX of Plaintiff's Complaint exactly which constitutional rights were violated as a result of the alleged civil conspiracy. In other portions of his Complaint, Plaintiff alleges that WSSC violated his Equal Protection and Due Process rights, so presumably those are the rights at issue in this claim.

[9]     Plaintiff relied on the Restatement of Torts and Title VII as the basis for his tort claims, but neither provides appropriate legal relief. Accordingly, this Court must examine relevant Maryland common law.

has failed to present evidence sufficient to create a genuine issue of material fact on any of these claims.

    **A.**    **Invasion of Privacy Claims**

Plaintiff himself brought his personal and medical information to light when he acted threateningly toward coworkers and appealed his discharge. Essentially, Plaintiff identifies three facts to support his four invasion of privacy claims: that Defendant (1) requested that he undergo an IME, (2) obtained medical and personal information about him through the IME process, and (3) shared that information with OAH during Plaintiff's discharge appeals. (*See, e.g.,* Compl. ¶¶ 262, 265, 269-70, 273, 278, 282, 286, 288.) Although mildly intrusive, none of these actions rises to the level of offensiveness associated with invasion of privacy torts, particularly in light of the fact that Plaintiff's own erratic behavior promulgated the request for an IME and he was the one who raised the appeal, putting his personal information at issue before the OAH.

For example, in order to show that Defendant committed the tort of false light, Plaintiff would have to show that Defendant gave "publicity to a matter concerning [him] that place[d] [him] before the public in a false light" where the false light was "highly offensive to a reasonable person" and where Defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter." *Bagwell v. Peninsula Regional Medical Center*, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995). Here, Plaintiff has presented no evidence that Defendant acted recklessly in seeking or sharing information about him, or that the information even placed him in a false light. The other invasion of privacy claims similarly fail for a complete lack of evidence that Defendant acted unreasonably, much less recklessly or with the intent to harm Plaintiff.

14

### B.     Intentional Infliction of Emotional Distress

In order to bring a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that "defendant, intentionally or recklessly, engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress." *Miller*, 121 F. Supp. 2d at 839.  Defendant's conduct in requiring Plaintiff to submit to an IME, even if objectionable to Plaintiff, hardly rises to the level of outrageousness required for a showing of intentional infliction of emotional distress.  In light of Plaintiff's own behavior at work, the IME was perfectly appropriate.

In sum, Plaintiff has not introduced sufficient evidence to create a genuine issue of material fact as to his tort claims, and Defendant is entitled to judgment as a matter of law.


### CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is hereby GRANTED, Defendant's Motion to Dismiss and Plaintiff's Motion to Depose WSSC's Witnesses and Reopen Discovery are hereby MOOT, and judgment is entered in favor of Defendant Washington Suburban Sanitary Commission and against Plaintiff Michael Smith.  A separate Order follows.


Dated:  October 4, 2006                          /s/
                                                 Richard D. Bennett
                                                 United States District Judge